OPINION
NIEMEYER, Circuit Judge:
Centro Tepeyac, a Montgomery County nonprofit corporation that provides pregnancy services but does not refer for or provide abortions, commenced this action against Montgomery County, Maryland, the Montgomery County Council, the Montgomery County Department of Health and Human Services, and Marc Hansen, the acting County Counsel (collectively, “Montgomery County” or “the County”), challenging the constitutionality of Montgomery County Resolution No. 16-1252. In its complaint, it contended that in compelling speech, the resolution violates its free speech rights under the First and Fourteenth Amendments to the U.S. Constitution.
Resolution 16-1252 requires “limited service pregnancy resource centers,” * such as Centro Tepeyac, to display a sign on their premises stating (1) “the Center does not have a licensed medical professional on staff’; and (2) “the Montgomery County Health Officer encourages women who are or may be pregnant to consult with a licensed health care provider.” The sign must be “written in English and Spanish,” “easily readable,” and “conspicuously posted.” Violation of Resolution 16-1252 is punishable as a “Class A civil violation,” which may be enforced by a court action or by a civil citation, and under Montgomery County law, each day of a continuing Class A civil violation is a separate offense. See Montgomery County, Md.Code §§ 1-19, l-20(c).
For relief, Centro Tepeyac sought a declaratory judgment that Resolution 16-1252 is unconstitutional and preliminary and permanent injunctive relief against its enforcement.
Applying strict scrutiny, the district court entered an order dated March 15, 2011, denying Centro Tepeyac’s motion for a preliminary injunction as to the first statement required by Resolution 16-1252 — “the Center does not have a licensed medical professional on staff’ — and granting its motion as to the second mandated statement — “the Montgomery County Health Officer encourages women who are or may be pregnant to consult with a licensed health care provider.” The court concluded that the first statement could likely be justified under the strict scrutiny standard but that the second statement compelled “unneeded speech” and therefore would not be “the least restrictive means of achieving a relevant government interest.”
Montgomery County appealed the district court’s preliminary injunction prohibiting enforcement of the second mandated *594 statement, and Centro Tepeyac cross-appealed the district court’s denial of its motion for an injunction with respect to the first mandated statement. For the reasons given in our decision today in Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore, 683 F.3d 539 (4th Cir.2012), we affirm the district court’s entry of a preliminary injunction and reverse its denial of the preliminary injunction requested by Centro Tepeyac with respect to the first mandated statement.
On Montgomery County’s appeal, we conclude that strict scrutiny is appropriate because Resolution 16-1252 compels noncommercial speech. And, as we found with respect to the ordinance in Greater Baltimore Center, the second statement mandated by the resolution cannot withstand such scrutiny because it is not narrowly tailored. If Montgomery County wishes to “encourage[ ] women who are or may be pregnant to consult with a licensed health care provider,” it must, at a minimum, first do so using its own voice. See Geater Baltimore Center, 683 F.3d at 556-58.
On Centro Tepeyac’s cross-appeal, we reverse the district court’s denial of injunctive relief with respect to the first mandated statement — “the Center does not have a licensed medical professional on staff.” The district court concluded that mandating that statement was likely permissible because the statement “does not require any other specific message and in neutral language states the truth.” This basis for approving the compelled speech, however, does not apply the governing standards that have been announced by the Supreme Court. As the Court has explained, even supposedly neutral and fact-based compelled disclosures can imperil free speech. See Riley v. Nat’l Fed’n of the Blind of N.C., Inc., 487 U.S. 781, 797-98, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988). The Riley Court noted, “[T]he government, even with the purest of motives, may not substitute its judgment as to how best to speak for that of speakers and listeners.” Id. at 791, 108 S.Ct. 2667. Thus, while the first mandated statement of Resolution 16-1252 may impose a comparatively less severe First Amendment burden, it still amounts to an impermissible government control of speech. The government-mandated statement, which must be posted “conspicuously” on a pregnancy center’s wall, suggests to potential clients that the center is not to be trusted and that a pregnancy center’s services, like religious counseling or job placement assistance, will usually be inferior to those offered by medical professionals. To be sure, Montgomery County is entitled to believe that pregnancy is first and foremost a medical condition, but it may not compel unwilling speakers to express that view.
Like the ordinance in Geater Baltimore Center, the first mandated statement in Resolution 16-1252 also suffers from serious underinclusiveness. Although underinclusive government regulations are often permissible, they pose a special problem in the First Amendment context because such regulations “raise! ] serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint.” Brown v. Entm’t Merchants Ass’n, — U.S. -, 131 S.Ct. 2729, 2740, 180 L.Ed.2d 708 (2011); see also City of Ladue v. Gilleo, 512 U.S. 43, 51, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994) (“[A]n exemption from an otherwise permissible regulation of speech may represent a governmental attempt to give one side of a debatable public question an advantage in expressing its views to the people” (internal quotation marks omitted)). In this case, pregnancy centers are singled out for disfavored treatment while *595 many other sources that pregnant women may consult for advice — Internet sites, bookstores, or houses of worship — are left unregulated, regardless of whether the advice they give comes from a “licensed medical professional.” Where, as here, the government seeks to burden speech in the name of some public interest, it must “demonstrate its commitment to advancing this interest by applying its prohibition evenhandedly.” Fla. Star v. B.J.F., 491 U.S. 524, 540, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989). The County has failed to follow this requirement.
Finally, we note that the goals of the “no licensed medical professional” disclosure could readily be achieved through less speech-restrictive methods. Such methods might include a more vigorous enforcement of laws against practicing medicine without a license. Or the County could simply publicize the names of the small number of pregnancy centers within its jurisdiction and explain that the centers do not employ doctors. Without first trying these or similar options, the County may not adopt a speech-restrictive strategy. See Thompson v. Western States Med. Ctr., 535 U.S. 357, 373, 122 S.Ct. 1497, 152 L.Ed.2d 563 (2002).
Accordingly, we affirm the district court’s order, dated March 15, 2011, to the extent that it grants Centro Tepeyac’s motion for a preliminary injunction and reverse to the extent that it denies Centro Tepeyac’s requested preliminary injunction.

It is so ordered.

 A "limited service pregnancy resource center" is defined as "an organization, center or individual” that: "has a primary purpose to provide pregnancy-related services”; "does not have a licensed medical professional on staff”; and "provides information about pregnancy-related services, for a fee or as a free service.”