KING, Circuit Judge,
dissenting:
I am somewhat bemused by the panel majority’s resoluteness in deciding that an innocuous and truthful disclaimer — “the Center does not have a licensed medical professional on staff’ — patently offends the First Amendment. Equally disconcerting, the majority makes this conclusion — concerning the first statement prescribed by the Resolution — in apparent disregard for the deference accorded to a district court in ruling on a preliminary injunction request. That is, “regardless of whether [we] would, in the first instance, have decided the matter differently,” the court’s discretionary decision to grant or deny an injunction request “will not be disturbed on appeal unless the record shows an abuse of that discretion.” Quince Orchard Valley Citizens Ass’n, Inc. v. Hodel, 872 F.2d 75, 78 (4th Cir.1989). Had I been the trial judge entertaining the injunction request in the first instance, I may well have denied it, not only as to the first statement, but also as to the second one (that “the Montgomery County Health Officer encourages women who are or may be pregnant to consult a licensed health care provider”). Regarding either statement, however, I am not at all left with the “definite and firm conviction” that the court “abuse[d] its discretion by applying an incorrect preliminary injunction standard, by resting its decision on a clearly erroneous finding of a material fact, or by misapprehending the law with respect to underlying issues in litigation.” Id. (internal quotation marks omitted).
The majority contends that the district court misapplied the Supreme Court’s governing standards concerning compelled speech by making a preliminary finding that the first statement “does not require any other specific message and in neutral language states the truth.” See Centro Tepeyac v. Montgomery Cnty., 779 F.Supp.2d 456, 471 (D.Md.2011). My colleagues observe that the Supreme Court has recognized that even “neutral and fact-based compelled disclosures can imperil free speech.” Ante at 594 (citing Riley v. Nat’l Fed’n of the Blind of N.C., Inc., 487 U.S. 781, 797-98, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988)). True enough, but the district court concluded that the first state *596 ment does not unconstitutionally imperil free speech. To be sure, the majority may disagree with that legal conclusion. See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston, 515 U.S. 557, 567, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995) (observing that we review de novo legal conclusions and mixed questions of law and fact concerning First Amendment claims). In fairness, however, the majority does not fault the district court for misapplying Supreme Court precedent. Rather, unlike the district court, the majority reads the first statement as conveying the subjective message that a pregnancy center “is not to be trusted,” or that a center’s “religious counseling or job placement assistance” services are “inferior to [services] offered by medical professionals.” Ante at 594.
Put simply, I cannot identify in the first statement the messages ascribed by the majority — without contravening the cardinal rule of construction that “we give the words of a statute their plain and ordinary meaning.” See Broughman v. Carver, 624 F.3d 670, 675 (4th Cir.2010) (Agee, J.) (internal quotation marks omitted). The Supreme Court instructed long ago that “the plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover.” Lynch v. Alworth-Stephens Co., 267 U.S. 364, 370, 45 S.Ct. 274, 69 L.Ed. 660 (1925). Of course, because we are dealing with a disclaimer, context matters. See Riley, 487 U.S. at 796, 108 S.Ct. 2667 (instructing that consideration be given to “the nature of the speech taken as a whole and the effect of the compelled statement thereon”). But to borrow the majority’s example, there is no reason to believe that a pregnant woman in need of religious counseling or a job would be instinctively distrustful or think less of a pregnancy center just because it does not have a licensed medical professional on staff. The disclaimer would cause only those women in need of medical services to reassess a pregnancy center’s proficiency in that regard — the Resolution’s intended effect. Indeed, if the Resolution were somehow ambiguous, “we must ascertain the interpretation ... that best implements [the legislative] intent and gives effect to the [Resolution’s] purpose.” See Long v. Merrifield Town Ctr. Ltd. P’ship, 611 F.3d 240, 244 (4th Cir.2010) (Niemeyer, J.). The County’s intent with respect to the Resolution was clear — to promote the health of women by ensuring that they have access to medical services, as reflected in the Resolution’s stated purpose:
The Board of Health’s concern is that clients may be misled into believing that a Center is providing medical services when it is not. Clients could therefore neglect to take action (such as consulting a doctor) that would protect their health or prevent adverse consequences, including disease, to the client or the pregnancy.
J.A. 198.[1]
The majority also concludes that the district court’s strict scrutiny analysis was faulty with respect to the narrow tailoring requirement. Once again, however, the majority merely disagrees with the court’s assessment that the Resolution’s first statement is narrowly tailored without identifying exactly how the court misapprehended the law. In my view, the majority simply disagrees with the ruling of the district court, believing instead that the first statement is underinclusive and *597 not the least restrictive means of achieving the County’s compelling interests. Under-inclusiveness is problematic in this case, the majority explains, because “pregnancy centers are singled out for disfavored treatment while many other sources that pregnant women may consult for advice— internet sites, bookstores, or houses of worship — are left unregulated, regardless of whether the advice they give comes from a ‘licensed medical professional.’” Ante at 594-95. That explanation betrays the majority’s staunch hostility to the Resolution, but it has no application here.
The district court made no finding that the first statement is viewpoint discriminatory.[2] The majority nevertheless concludes — without reference to the legislative record or to any evidence whatsoever — that the Resolution disfavors the viewpoint of pregnancy centers, apparently because it does not also compel internet websites, bookstores, and houses of worship to disclose that they have no licensed medical professional on staff. But the County did not receive reports or evidence that pregnant women were being deceived into believing that internet websites, bookstores, and houses of worship were providing medical services, such as abortions. Rather, the County heard from multiple speakers relating their experiences with pregnancy centers and received detailed reports documenting false and misleading information provided by pregnancy centers. Moreover, the County “had an obligation to deal with existing public health problems, without addressing the likelihood of deception from every possible source of information available to pregnant women.” See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 683 F.3d 539, 574 (4th Cir.2012) (King, J., dissenting) (citing Buckley v. Valeo, 424 U.S. 1, 105, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (observing that a “statute is not invalid under the Constitution because it might have gone farther than it did, that a legislature need not strike at all evils at the same time, and that reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind” (citations and internal quotation marks omitted))).
Finally, the district court committed no error regarding least restrictive alternatives. Significantly, my good colleagues in the majority point to nothing in this limited record to demonstrate that their proposed alternatives would be least restrictive, yet “as effective in achieving the [Resolution’s] legitimate purpose.” See Reno v. Am. Civil Liberties Union, 521 U.S. 844, 874, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) (emphasis added). Publicizing “the names of ... the centers [that] do not employ doctors,” as the majority suggests, ante at 595, would “not ensure that every woman who visits a ... pregnancy center will be apprised of the services offered there, at a time when such information is most needed.” See Greater Balt. Ctr., 683 F.3d at 576 (King, J., dissenting). Likewise, “[i]nadequate or unenforceable ... statutes, problems of proof, and scarcity of resources,” id., may significantly hamper the majority’s suggested “enforcement of laws against practicing medicine without a license,” ante at 595. *598 In any event, the district court, unlike the majority, properly constrained itself to the record. See Centro Tepeyac, 779 F.Supp.2d at 471 (concluding that “the record is at least colorable at this stage to suggest that the [first statement] is narrowly tailored to meet the [compelling] interest”).[3] The court was certainly cognizant of some of the proposed alternatives to the Resolution’s second statement. See id. at 469 n. 9 (observing that “options less restrictive than compelled speech could be used to encourage pregnant women to see a licensed medical professional^ including] posting] notices encouraging women to see a doctor ... or launching] a public awareness campaign”). Nevertheless, based on the evidence before it, the court determined that those alternatives were not necessarily less restrictive or as effective as the first statement — or, at least, that Centro Tepeyae had failed to make the required “clear showing” that it was “likely to succeed on the merits” with respect to narrow tailoring, see Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). Indeed, Centro Tepeyae did not propose any less restrictive alternatives until the hearing on the parties’ respective motions. See J.A. 168. Because narrow tailoring usually demands “a fact specific and situation specific inquiry,” see Deegan v. City of Ithaca, 444 F.3d 135, 142 (2d Cir.2006), the record concerning the alternatives was inadequate to warrant an injunction at that point in the litigation, see Beal v. Stern, 184 F.3d 117, 128-30 (2d Cir.1999) (concluding that appellants had not shown likelihood of success for injunction request where, inter alia, there was insufficient evidence to determine whether means chosen for regulation were narrowly tailored); see also New Albany DVD, LLC v. City of New Albany, Ind., 581 F.3d 556, 561 (7th Cir.2009) (vacating entry of injunction and remanding to district court for evidentiary hearing to determine whether city could satisfy intermediate scrutiny).
Accordingly, and in recognition of the proposition that injunction requests are “extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances,” Scotts Co. v. United Indus. Corp., 315 F.3d 264, 272 (4th Cir.2002) (internal quotation marks omitted), the district court did not abuse its discretion in ruling as it did.
Because I would affirm the rulings of the district court, I respectfully dissent.

. Citations herein to “J.A._" refer to the contents of the Joint Appendix filed by the parties in this appeal.

. The district court did conclude that the Resolution "is not ‘content-neutral’ ” because the "disclosure requirements are activated in part by a particular message" and "triggered by the 'provision of information about pregnancy-related services.’ ” Centro Tepeyac, 779 F.Supp.2d at 462 n. 5. But, of course, "viewpoint-neutrality is not equivalent to content-neutrality and the difference between the two concepts is critical in a first amendment analysis.” Baugh v. Judicial Inquiry & Review Comm’n, 907 F.2d 440, 444 (4th Cir. 1990).

. In stark contrast to the district court's approach in Greater Baltimore Center — i.e., awarding summary judgment and permanently enjoining a city ordinance based on an undeveloped record — the district court in this case appreciated that, in the absence of further factual development, the free speech claim could not be resolved solely on the County’s motion to dismiss or, alternatively, for summary judgment and Centro Tepeyac’s preliminary injunction motion. For example, the court observed the current absence (but not future impossibility) of evidence that the Resolution regulates commercial or professional speech. See Centro Tepeyac, 779 F.Supp.2d at 463, 467. The court also recognized that the County was entitled to satisfy judicial scrutiny with discoverable evidence. See id. at 468. Indeed, Centro Tepeyae itself recognized the need for discovery in opposing the County’s motion to dismiss.