OPINION
NIEMEYER, Circuit Judge:
Archbishop Edward F. O’Brien, St. Brigid’s Roman Catholic Congregation, Inc., and the Greater Baltimore Center for Pregnancy Concerns, Inc. (“the Pregnancy Center”) commenced this action against the Mayor and City Council of Baltimore, challenging the constitutionality of the City’s Ordinance 09-252, which requires that “limited-service pregnancy centers,” such as the Pregnancy Center, post signs disclaiming that they “do[ ] not provide or make referral for abortion or birth control services.” The complaint alleges that the ordinance, both facially and as applied to the plaintiffs, violates the plaintiffs’ free speech, free exercise, and equal protection rights under the First and Fourteenth Amendments to the U.S. Constitution, as well as the plaintiffs’ rights under the Conscience Clause of Maryland’s health law.
The district court granted summary judgment to the Pregnancy Center on its freedom of speech count, dismissed the Archbishop and St. Brigid’s as plaintiffs for lack of standing, and dismissed the remaining counts without prejudice, in view of its free speech ruling. The court held that the disclaimer required by Ordinance 09-252 is “a form of compelled speech” that “alters the course of a [pregnancy] center’s communication with a client or prospective client about abortion and birth-control” and “is based, at least in part, on disagreement with the viewpoint of the speaker.” The court entered a permanent injunction barring enforcement of the ordinance. For the reasons that follow, we affirm.
I
In December 2009, the City of Baltimore enacted Ordinance 09-252. The ordinance applies to “limited-service pregnancy centers,” which are defined as “any person”
(1) whose primary purpose is to provide pregnancy-related services; and
(2) who:
(i) for a fee or as a free service, provides information about pregnancy-related services; but
(ii) does not provide or refer for:
(A) abortions; or
(B) nondirective and comprehensive birth-control services.
Baltimore City Health Code § 3-501. Under the ordinance, “[a] limited-service pregnancy center must provide its clients and potential clients with a disclaimer substantially to the effect that the center does not provide or make referral for abortion or birth-control services.” Id. § 3-502(a). This disclaimer must be made through one or more “easily readable” signs that are *549 “conspicuously posted in the center’s waiting room” and written in English and Spanish. Id. § 3 — 502(b). The failure to comply with the terms of the ordinance is punishable by a citation carrying a maximum civil penalty of $150. Id. § S-506.[1]
The legislative record indicates that the President of the Baltimore City Council introduced Bill 09-406 (later to become Ordinance 09-252), after the City Council President had met with abortion rights advocacy groups, which complained that some pregnancy clinics provide inaccurate information to women about abortions. A spokesperson for the City Council President explained in a public statement: “The Bill deals with whether women are told up front what the facts are. Women need to know up front what to expect when they go into these centers.” The “Bill Synopsis” presented to the City Council stated that the Bill was “introduced because of the ‘importance of choice.’ ”
At the hearings on the Bill, representatives of Planned Parenthood of Maryland, NARAL Pro-Choice Maryland, and other pro-choice groups spoke in favor of the Bill, and representatives of the Archbishop, the Maryland Right to Life Committee, and other pro-life groups spoke in opposition. The Bill was enacted in November and became law on December 4, 2009.
The Pregnancy Center is a “limited-service pregnancy center,” as defined in Ordinance 09-252, operating in Baltimore City from two locations and providing services to pregnant women, such as pregnancy testing; classes in prenatal development, post-pregnancy parenting, and life skills; Bible studies; and material support for women through its “Hannah’s Cupboard” program, including diapers, formula, baby and maternity clothes, toys, and books. It also provides women with information on “abstinence and natural family planning, a form of birth control,” but does not provide referrals “for abortions or other methods of birth control.” The Pregnancy Center does not charge its clients for any of its services, which it provides through paid employees and volunteers, each of whom must sign a statement affirming his or her Christian faith and belief that abortion is immoral.
Archbishop Edward F. O’Brien, the Archbishop of Baltimore, is a corporate entity that owns the property on which the Pregnancy Center operates one of its locations and on which St. Brigid’s Roman Catholic Church operates. Neither the Archbishop nor St. Brigid’s charges the Pregnancy Center for the use of its space on the property.
In March 2010, before any enforcement of Ordinance 09-252, the Archbishop, St. Brigid’s, and the Pregnancy Center commenced this action against the Mayor and City Council of Baltimore,[2] alleging violations of the Free Speech and Free Assembly Clauses of the First Amendment, the *550 Free Exercise Clause of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Conscience Clause in Maryland Code, Health-General, § 20-214(a)(l) (providing that a “person may not be required to ... refer ... for ... any medical procedure that results in ... termination of pregnancy” and that the refusal to provide abortion referrals “may not be a basis for ... [c]ivil liability to another person ... or ... [disciplinary or other recriminatory action”). The complaint alleges that the Pregnancy Center does not provide or refer for abortions, “based on moral and religious beliefs,” and that Ordinance 09-252 specifically targets pro-life pregnancy centers such as the Pregnancy Center and thus “regulates communications at the Pregnancy Center that are personal, moral, political, and religious.” It also states that “by requiring a disclaimer that the [pregnancy] center does not provide or refer for abortions, the ordinance compels plaintiffs to deliver the implied message that these services are available elsewhere and should be considered,” thus appearing to legitimize such services, in violation of the plaintiffs’ beliefs. The complaint also objects to the ordinance’s requirement that the Pregnancy Center “post a sign saying that it does not provide birth control services,” when in fact it does “in the form of education about abstinence and natural family planning,” which, the complaint asserts, are medically recognized means of birth control. The plaintiffs seek a declaratory judgment that the ordinance is unconstitutional on its face and/or as applied to plaintiffs and an injunction prohibiting the ordinance’s enforcement. Some two months after they filed their complaint but before the City filed its answer, the plaintiffs also filed a motion for partial summary judgment on their free speech and equal protection claims.
The City filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), alleging that the Archbishop and St. Brigid’s lacked standing to sue and that the complaint otherwise failed to state a claim on which relief could be granted. In response to the plaintiffs’ motion for summary judgment, the City submitted an affidavit of an expert witness, along with a motion under Rule 56(f), requesting further discovery to amplify its response.
Following a hearing on the motions, the district court entered an order dated January 31, 2011, granting the City’s motion to dismiss the Archbishop and St. Brigid’s for lack of standing; denying the City’s motion to dismiss, which it converted to a motion for summary judgment in view of the additional materials submitted by the parties; denying the City’s request for further discovery as not necessary to the issue being decided; granting the Pregnancy Center’s motion for summary judgment on its free speech claim, as set forth in Count 1; dismissing without prejudice the plaintiffs’ remaining claims in view of its ruling on the free speech claim; and entering a judgment permanently enjoining the enforcement of the ordinance. In granting summary judgment to the Pregnancy Center on its free speech claim, the court applied strict scrutiny as the result of its conclusion that the ordinance compelled speech and was not viewpoint neutral and concluded that the ordinance violated the Pregnancy Center’s free speech rights.
From the district court’s judgment, the City appealed, challenging all of the court’s rulings except the dismissal of the Archbishop and St. Brigid’s. And the Archbishop and St. Brigid’s filed a cross-appeal, challenging their dismissal for lack of standing.
II
We address first the plaintiffs’ cross-appeal challenging the district *551 court’s dismissal of the Archbishop and St. Brigid’s for lack of standing to challenge Ordinance 09-252. The district court reasoned that because the Archbishop and St. Brigid’s “are not, and do not operate, limited-service pregnancy centers subject to the Ordinance,” the ordinance “does not require the Archbishop and St. Brigid’s to take any action and does not subject them to liability” under the law. The court concluded, therefore, that the Archbishop and St. Brigid’s did not suffer a “concrete and particularized” injury, as required under Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
The Archbishop and St. Brigid’s argue that the district court ignored the injury that they suffer as a result of the ordinance’s infringement of their right to freedom of speech. They maintain that because they own the building in which the Pregnancy Center is located, they “suffer a constitutional harm when they are forced ‘to use their private property as a ... billboard for the State’s ideological’ message” (quoting Wooley v. Maynard, 430 U.S. 705, 715, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977)). They also argue that “the Baltimore City Health Code leaves open the possibility that the City might seek to enforce the ordinance against the owner of the property [used by the Pregnancy Center],” citing Baltimore City Health Code § 5-201.
Although Ordinance 09-252 does require speech to be posted on property owned by the Archbishop and St. Brigid’s, its mandate only applies to the space operated by the Pregnancy Center. The Archbishop and St. Brigid’s do not qualify as a pregnancy center and they do not operate the Pregnancy Center. Indeed, the space where the disclosure would be located is separate from the church-operated portions of the building, and a regular visitor to the church would not see the disclaimer sign unless visiting the Pregnancy Center itself. In these circumstances it would be most doubtful that anyone would attribute the government’s message to the Archbishop or St. Brigid’s, rather than to the Pregnancy Center or the City.
The Archbishop and St. Brigid’s suggestion that they do not charge for the use of their space and thus are not “ordinary landlords” does not change the analysis. If anything, this fact might cut against them because, by their own admission, their interest in the ordinance is related primarily to a “desire to promote life over abortion.” Ideological injuries of this sort, without more, have routinely been held insufficient to support standing, see, e.g., Sierra Club v. Morton, 405 U.S. 727, 739, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), even when those ideologies are intertwined with religious beliefs, see, e.g., Harris v. McRae, 448 U.S. 297, 320-21, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980).
We also conclude that there is little likelihood that the Archbishop or St. Brigid’s could face liability if the Pregnancy Center violated Ordinance 09-252. By its terms, the ordinance only authorizes the issuance of environmental or civil citations to pregnancy centers themselves, and contains no provisions for joint-and-several liability of landlords. See Baltimore City Health Code § 3-506. And the portion of the City Health Code that the Archbishop and St. Brigid’s cite as a potential basis for liability, § 5-201, relates only to nuisance abatement; it has no connection to Ordinance 09-252 and does not indicate that a failure to comply with the other, nonnuisance-related regulations can be penalized. See Baltimore City Health Code § 5-101 (defining nuisances); id. § 5-209 (enforcement provisions).
Accordingly, we affirm the district court’s ruling that the Archbishop and St. *552 Brigid’s lack standing to challenge the ordinance.
Ill
In its appeal, the City contends first that the district court erred in applying strict scrutiny to the ordinance. It argues that the ordinance, even though compelling speech, compels commercial speech, which is subject to a lower level of scrutiny, involving the determination of whether the “disclosure requirements are reasonably related to the State’s interest in preventing deception of customers.” Alternatively, the City urges us to draw on the disclosure requirements of election law and abortion regulation, with respect to which cases have applied an “exacting” scrutiny standard or other intermediate scrutiny standard.
The Pregnancy Center contends that compelling someone to speak a message that the speaker would not otherwise make is a content-based regulation that is subject to strict scrutiny. Responding to the City’s argument that Ordinance 09-252 compels commercial speech, the Pregnancy Center maintains that, to the contrary, the ordinance targets its free provision of information about pregnancy and not any proposal for a commercial transaction. Indeed, it notes that it does not sell any goods or services. At bottom, it asserts that no case supports the City’s claim that “government can require private speakers to post a government-mandated message in their waiting room (to all visitors, at all times) unrelated to any commercial transaction being proposed by the speaker.”
We begin by noting that the ordinance does indeed compel the Pregnancy Center to speak, mandating it to post a sign that it “does not provide or make referral for abortion or birth-control services.” Moreover, in compelling that speech, the Pregnancy Center is, in this case, required to participate in the City’s effort to tell pregnant women that abortions are available elsewhere as a morally acceptable alternative, contrary to the moral and religious beliefs of the Pregnancy Center. A representative of the Pregnancy Center stated that absent the ordinance’s mandate, the Pregnancy Center would not speak to clients and potential clients in the manner required by the ordinance.
It is well-established that a regulation compelling noncommercial speech is subject to strict scrutiny and must be narrowly tailored to serve a compelling governmental interest. United States v. Playboy Entm’t Group, Inc., 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000); Riley v. Nat’l Fed’n of the Blind of N.C., Inc., 487 U.S. 781, 796, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988). The First Amendment protects not only “the right to speak freely,” but also “the right to refrain from speaking at all.” Wooley v. Maynard, 430 U.S. 705, 714, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); see also Hurley v. Irish-American Gay, Lesbian, & Bisexual Group of Boston, 515 U.S. 557, 573, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995) (“[0]ne important manifestation of the principle of free speech is that one who chooses to speak may also decide what not to say” (internal quotation marks omitted)). Because “[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech,” laws that compel speech are normally considered “content-based regulation^] of speech” and therefore are subject to strict scrutiny. Riley, 487 U.S. at 795, 108 S.Ct. 2667. Indeed, strict scrutiny applies even in cases where the compelled disclosure is limited to factually accurate or non-ideological statements. Id. at 797-98, 108 S.Ct. 2667 (invalidating a requirement that professional fund-raisers disclose to potential donors the percentage of charitable contributions collected during the previous *553 12 months that were actually turned over to the charity); see also Hurley, 515 U.S. at 573, 115 S.Ct. 2338 (the “general rule[ ] that the speaker has the right to tailor the speeeh[ ] applies not only to expressions of value, opinion, or endorsement, but equally to statements of fact”).
The City does not take issue with these First Amendment principles, generally. Rather, it argues that the speech mandated here is commercial speech and therefore is subject to the lower standard of judicial scrutiny applicable to commercial speech. Alternatively, it argues that the speech mandated here is analogous to election-law disclosures or abortion-regulation disclosures, both of which have been evaluated under a lower level of scrutiny than strict scrutiny. We address each of these arguments in order.
A
In making the argument that Ordinance 09-252 regulates commercial speech, the City contends that “when a Pregnancy Center offers to provide commercially valuable, pregnancy-related goods or services to a consumer, the Pregnancy Center is proposing a commercial transaction.” Specifically, the City asserts that although many pregnancy centers operate as nonprofits, they effectively engage in commerce by offering pregnancy testing, sonograms, and options counseling, “all of which have commercial value, garnering payments and fees in the marketplace.” Appellants Br. at 16 (citing Camps Newfound/Owatonna, Inc. v. Town of Harrison, 520 U.S. 564, 573, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997) (holding that a nonprofit summer camp was engaged in commerce for purposes of the dormant Commerce Clause)). The City’s formulation of the commercial speech doctrine, however, is not supported by the law.
The Supreme Court has defined commercial speech as “expression related solely to the economic interests of the speaker and its audience.” Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm’n of N.Y., 447 U.S. 557, 561, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Stated in another way, the hallmark of commercial speech is that it “does no more than propose a commercial transaction.” Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 66, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983) (internal quotation marks omitted); see also Martin H. Redish, Commercial Speech, First Amendment Intuitionism and the Twilight Zone of Vieurpoint Discrimination, 41 Loy. L.A. L.Rev., 67, 75 (2007) (“[T]he [Supreme] Court has unambiguously adopted the view that commercial speech is confined to expression advocating purchase”). In some circumstances, such as when expression clearly promotes a speaker’s economic interests, speech may be classified as commercial even when it “cannot be characterized merely as proposals to engage in commercial transactions.” Bolger, 463 U.S. at 67-68, 103 S.Ct. 2875 (holding that advertisements discussing the health benefits of contraceptives were commercial speech); see also Wag More Dogs, Ltd. Liab. Corp. v. Cozart, 680 F.3d 359 (4th Cir.2012) (holding that business’s outdoor mural- was commercial speech where business conceded mural was advertising and “had an economic motivation for displaying the painting”). But speech does not “retain[ ] its commercial character when it is inextricably intertwined with otherwise fully protected speech.” Riley, 487 U.S. at 796, 108 S.Ct. 2667.
Rather than regulating traditional commercial advertising, Ordinance 09-252 targets speech regarding the provision of “free services.” While this fact alone might not be dispositive, it becomes so in this case because there is no indication that the Pregnancy Center is motivated by any economic interest or that it is proposing any commercial transaction. The *554 Pregnancy Center seeks to provide free information about pregnancy, abortion, and birth control as informed by a religious and political belief. This kind of ideologically driven speech has routinely been afforded the highest levels of First Amendment protection, even when accompanied by offers of commercially valuable services. See, e.g., In re Primus, 436 U.S. 412, 422, 439, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978) (holding that a lawyer’s solicitation of pro-bono client was protected by the First Amendment because the lawyer’s actions “were undertaken to express personal political beliefs and to advance ... civil-liberties objectives ... rather than to derive financial gain”).
The City’s argument does not address what commercial transaction is proposed by the Pregnancy Center’s speech or what economic interest motivates the Pregnancy Center’s speech. Instead, the City would define commercial speech to include any speech that offers services “which have commercial value, garnering payments and fees in the marketplace” generally. Adopting this definition of commercial speech would effect an unprecedented expansion of the commercial speech doctrine and is unsupported by citation to any applicable Supreme Court precedent. As the district court explained, the City’s position would mean that “any house of worship offering their congregants sacramental wine, communion wafers, prayer beads, or other objects with commercial value, would find their accompanying speech subject to diminished constitutional protection.” Indeed, it is difficult to imagine any charitable organization whose speech would not be considered “commercial” under the City’s proposed broad definition.
In short, we agree with the district court that the pregnancy centers are not engaged in commercial speech and that their speech cannot be denied the full protection of strict scrutiny on that basis.
B
The City argues alternatively that if the Pregnancy Center’s speech is not considered commercial speech, it should still be accorded reduced protection because the disclaimer required by Ordinance 09-252 is analogous to the disclosure requirements imposed on abortion providers and in campaign finance laws, both of which are subject to a lower level of scrutiny than strict scrutiny. See Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (plurality opinion) (applying intermediate scrutiny to disclosure requirements under Pennsylvania’s abortion law); Citizens United v. Fed. Election Comm’n, - U.S. -, 130 S.Ct. 876, 914, 175 L.Ed.2d 753 (2010) (applying “exacting scrutiny” to campaign finance disclosure requirements).
The differing contexts of the speech restrictions in those cases, however, render the cases inapplicable to the compelled speech before us. In Casey, the mandatory disclosures focused on the speech of licensed medical professionals, and the regulations were upheld because, even though they implicated a physician’s right not to speak, they did so “only as part of the practice of medicine, subject to reasonable licensing and regulation by the State.” Casey, 505 U.S. at 884, 112 S.Ct. 2791. More particularly, the regulations there were permissible because they facilitated the process of obtaining a patient’s informed consent prior to performing a medical procedure. Thus the regulation of such professional speech was imposed incidental to the broader governmental regulation of a profession and was justified by this larger context. In contrast, the pregnancy centers that are subject to Ordinance 09-252 do not practice medicine, are not staffed by licensed professionals, and *555 need not satisfy the informed consent requirement.[3]
Similarly, the exacting scrutiny standard applied to finance disclosure laws in the campaign finance cases is justified by circumstances that are also not applicable here. In the Supreme Court’s cases of Citizens United and Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the Court drew a distinction between regulations that limit campaign contributions and restrict campaign activities and regulations that merely require the disclosure of objective financial information. The Supreme Court has never suggested that Buckley’s holding that disclosure requirements do not substantially burden speech applies to speech regulations more generally. See Doe v. Reed, — U.S. -, 130 S.Ct. 2811, 2818, 177 L.Ed.2d 493 (2010) (“We have a series of precedents considering First Amendment challenges to disclosure requirements in the electoral context ” (emphasis added)). While disclosure of campaign contributions or expenditures will always be limited to factual information, the line between fact and opinion in most compelled speech cases will be much harder to draw. Thus, campaign finance disclosure laws are less likely to be impermissibly content- or viewpoint-based and pose a lower risk of altering the speaker’s message. The regulation imposed by Ordinance 09-252, however, burdens the content of speech generally, requiring pregnancy centers to speak in a manner that they might otherwise wish to avoid. This type of regulation is significantly more analogous to the restrictions on campaign speech that the Court held were subject to strict scrutiny. See Citizens United, 130 S.Ct. at 898; Buckley, 424 U.S. at 58-59, 96 S.Ct. 612.
Accordingly, we affirm the district court’s conclusion that Ordinance 09-252 regulates the Pregnancy Center’s fully protected, non-commercial speech and therefore is subject to strict scrutiny.[4]
IV
“Content-based [speech] regulations are presumptively invalid.” R.A. V. v. City of St. Paul, 505 U.S. 377, 382, 112 *556 S.Ct. 2538, 120 L.Ed.2d 305 (1992). The City thus bears the burden of rebutting the presumption of invalidity. Playboy Entm’t Group, 529 U.S. at 817, 120 S.Ct. 1878. Indeed, “[i]t is rare that a regulation restricting speech because of its content will ever be permissible.” Id. at 818, 120 S.Ct. 1878. The City can, nonetheless, rebut the presumption if it is able to show that the ordinance is “narrowly tailored to promote a compelling Government interest,” such that the ordinance is the “least restrictive alternative” to serve the government’s purpose. Id. at 813, 120 S.Ct. 1878; Ashcroft v. ACLU, 542 U.S. 656, 666, 124 S.Ct. 2783, 159 L.Ed.2d 690 (2004).
The City claims it can satisfy this strict scrutiny standard, arguing that it has at least two compelling interests served by the ordinance and that the ordinance is narrowly tailored to promote those interests. First, the City claims that it has an interest in countering what it maintains are the “deceptive business practices” of certain pregnancy centers. According to the City, these practices include deceptive advertising, delaying tactics intended to prevent women from obtaining abortions, and misleading statements about the medical and psychological impact of abortion. To support this argument, the City cites two reports that purport to document the deceptive practices of pregnancy centers: A 2006 report prepared for U.S. Representative Henry Waxman, and a 2008 report compiled by the NARAL Pro-Choice Maryland Fund detailing the results of its investigation of pregnancy centers in Maryland.
Second, the City argues that it has an interest in protecting the health of pregnant women and in ensuring that pregnant women who seek abortions have prompt access to medical services. The City notes that the risks and costs associated with abortion increase as a woman advances through her pregnancy. Similarly, the City contends that “delays in access to the birth-control method of an individual’s choice can leave the individual and his or her partner vulnerable to unintended pregnancy and sexually transmitted disease.” Thus, the City argues, delays in obtaining abortion services pose a clear threat to public health.
To be sure, the City has a considerable interest in promoting the general health and well-being of its citizens. But as the Supreme Court recently reiterated, to demonstrate the existence of a compelling interest, a government “must specifically identify an ‘actual problem’ in need of solving.” Brown v. Entm’t Merchants Ass’n, -U.S. -, 131 S.Ct. 2729, 2740, 180 L.Ed.2d 708 (2011) (quoting Playboy Entm’t Group, 529 U.S. at 822-23, 120 S.Ct. 1878). Although the existence of such a problem need not be exhaustively documented, “the Government must present more than anecdote and supposition” to support a speech restriction. Playboy Entm’t Group, 529 U.S. at 822, 120 S.Ct. 1878. With respect to Ordinance 09-252, and the Pregnancy Center, the City failed to carry its burden to show a compelling interest.
Here, the record establishes, at most, only isolated instances of misconduct by pregnancy centers generally, and, as the City concedes, none by the Pregnancy Center itself. Indeed, the record contains no evidence that any woman has been misled into believing that any pregnancy center subject to Ordinance 09-252 was a medical clinic or that a woman in Baltimore delayed seeking medical services because of such a misconception. The City instead cites allegations of deceptive practices occurring in other locations or second-hand reports of “stories about harassment.” The City’s failure to provide more than speculative evidence of problems at Baltimore’s pregnancy centers strongly *557 suggests that the need for regulation of those centers is not as pressing as the City asserts.
The City’s claim of a compelling interest is also called into question by its selective pursuit of its interest. While the City asserts that it is primarily concerned with ensuring that women receive accurate information about their pregnancies, Ordinance 09-252 does not focus on or reach the vast majority of sources that pregnant women would likely consult. Bookstores, websites, religious leaders, and pregnant women’s friends and family — all of whom might potentially provide a woman with “incorrect” information about her pregnancy — are unaffected by the ordinance. This kind of underinclusiveness “raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint.” Brown, 131 S.Ct. at 2740; see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 546-47, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) (“Where government restricts only conduct protected by the First Amendment and fails to enact feasible measures to restrict other conduct producing substantial harm or alleged harm of the same sort, the interest given in justification of the restriction is not compelling”).
Moreover, the City’s claim to be promoting a compelling interest is seriously undermined by its failure to pursue any other course to promote its interest other than to restrict the Pregnancy Center’s speech. This fact is particularly salient based on the City’s admission that the record reflects that it has done nothing other than enact Ordinance 09-252 to combat the perceived danger of misleading information from the Pregnancy Center and like facilities. The need was thus not so compelling as to cause the City to post a single notice in any City building or facility, to place a warning on its own web-site, or to give any public service information in furtherance of its interest. The City also conceded that it has referred and continues to refer women to the Pregnancy Center without any forewarning as to the danger of misinformation the City believes the women will encounter there. To find, with these facts, that the City has shown a compelling interest would be dubious at best.
We need not, however, rely entirely on the weakness of the City’s demonstration that in enacting the ordinance, it was promoting a compelling government interest, because the more significant problem for the City — the one that we find fatal — is that the ordinance is not narrowly tailored to serve the City’s interest. “A statute is narrowly tailored if it targets and eliminates no more than the exact source of the ‘evil’ it seeks to remedy.” Frisby v. Schultz, 487 U.S. 474, 485, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988). “Broad prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms.” NAACP v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) (citations omitted). Courts may find that a statute is not narrowly tailored when, among other things, the statute does not advance the purported compelling interests, e.g., Meyer v. Grant, 486 U.S. 414, 426, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988); or when the statute is overinclusive, e.g., Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd., 502 U.S. 105, 120-21, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991); or when the government has other, less speech-restrictive alternatives available, e.g., Playboy Entm’t Group, 529 U.S. at 816-17, 120 S.Ct. 1878. We conclude that Ordinance 09-252 is an example of all three of these indicators.
First, the ordinance purports to target false advertising, yet it fails actually to *558 regulate “deceptive practices” or false advertising. Further, the ordinance applies to all prégnancy centers regardless of whether they advertise at all.
Second, the ordinance is overinclusive in that it applies equally to pregnancy centers that engage in deceptive practices and those whose speech is entirely truthful. See Fed. Election Comm’n v. Mass. Citizens for Life, Inc., 479 U.S. 238, 265, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986) (stating that for a law to be narrowly tailored “government must curtail speech only to the degree necessary to meet the particular problem at hand” and “must avoid infringing on speech that does not pose the danger that has prompted regulation”).
Finally, there are also several alternatives that would address the problems targeted by the ordinance while imposing a lesser burden on speech. Most obviously, the City could speak with its own voice. It might, for example, use its own resources to undertake public education campaigns addressing the alleged dangers of pregnancy centers, or more generally, promoting consultation with physicians for pregnant women. Cf. 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 507, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996) (“It is perfectly obvious that alternative forms of regulation that would not involve any restriction on speech would be more likely to achieve the State’s goal of promoting temperance .... [Educational campaigns focused on the problems of excessive, or even moderate, drinking might prove to be more effective”). The City could also produce a document or website listing local pregnancy centers and noting what services are available at each. See Riley, 487 U.S. at 800, 108 S.Ct. 2667 (“[T]he State may itself publish the detailed financial disclosure forms it requires professional fundraisers to file. This procedure would communicate the desired information to the public without burdening a speaker with unwanted speech”). And the City always retains the option of prosecuting violations of its criminal and civil laws that proscribe deceptive advertising and deceptive statements made by pregnancy centers. See Riley, 487 U.S. at 800, 108 S.Ct. 2667; see also Nefedro v. Montgomery Cnty., 414 Md. 585, 996 A.2d 850, 863 (2010) (holding that fraud laws were a less restrictive alternative to a law prohibiting remuneration for fortunetelling).
That the City resorted to speech restrictions before trying these or other similar options is more than enough to doom the ordinance. See Thompson v. Western States Med. Ctr., 535 U.S. 357, 373, 122 S.Ct. 1497, 152 L.Ed.2d 563 (2002) (“If the First Amendment means anything, it means that regulating speech must be a last — not first — resort”).
The City seeks to salvage the ordinance by arguing that it imposes on pregnancy centers a burden that is de minim-is, and that the signage requirement is less restrictive than other methods of communicating the disclaimer. The City suggests, for example, that it could have required the disclaimer to be included on “every page of a pregnancy center’s website, as well as text in all paid advertisements, brochures, and other written materials.” But this argument does not save the law. First, the impact is not minimal. As the district court found below, the ordinance inevitably “alters the course of a center’s communications with a client or potential client” by requiring that the Pregnancy Center’s initial communication occur in “the presence of a stark and immediate statement about abortion and birth-control.” Second, even a de minim-is restriction on speech would not make the ordinance the least restrictive option, as required to survive strict scrutiny. See Playboy Entm’t Group, 529 U.S. at 813, 120 S.Ct. 1878.
*559 In sum, while the city has not demonstrated a compelling government interest rather than simply its disfavor with a particular speaker’s speech, we do not rest on that failure because Ordinance 09-252 is not narrowly tailored to promote the City’s interest so as to justify its intrusion on the Pregnancy Center’s speech. Accordingly, we hold that Ordinance 09-252 is invalid, in violation of the First Amendment presumption that “speakers, not the government, know best both what they want to say and how to say it.” Riley, 487 U.S. at 791, 108 S.Ct. 2667.
V
Finally, the City contends that the district court abused its discretion (1) in converting its motion to dismiss into a motion for summary judgment, without giving it prior notice and without allowing it discovery before deciding the motion, and (2) in dismissing the plaintiffs’ remaining counts (other than the free speech count) without prejudice, rather than with prejudice. We find no error in these rulings and also see no prejudice to the City.
By converting the City’s Rule 12(b)(6) motion into a summary judgment motion, the district court did not deny the City its opportunity to press its claim that the complaint failed to state a claim upon which relief could be granted. This procedural ruling, in the context of the plaintiffs’ pending motion for summary judgment, simply gave recognition to the fact that the court would be looking at the case more broadly on plaintiffs’ summary judgment motion. Because of that motion, the City was on notice that the court would be considering matters beyond the complaint to resolve the plaintiffs’ free speech claim and that the City should, if it wished, file a response to that motion for summary judgment. The procedural conversion in this context had the effect simply of allowing the court to consider the parties’ dis-positive motions as cross-motions for summary judgment and take into account any evidence that the parties might wish to submit. And indeed, the City did submit matters outside of the complaint and its motion to dismiss for consideration by the court.
The City argues that additional discovery would have given it “the opportunity to gather additional support for key factual propositions, including that Pregnancy Centers engage in deceptive advertising, such deception threatens public health, and the provision of services by Pregnancy Centers is a form commerce.” The dissent adopts the same position. But as the district court explained, additional discovery was unnecessary. The district court assumed for purposes of its analysis that the Ordinance served the compelling interests that the City claimed. Instead of exploring any factual context that might be relevant to that proposition, the court struck down Ordinance 09-252 because it was not narrowly tailored, a problem that was apparent on the face of the Ordinance. “Whether [a] regulation meets the ‘narrowly tailored’ requirement is of course a question of law.” United States v. Doe, 968 F.2d 86, 88 (D.C.Cir.1992); see also Vill. of Schaumburg v. Citizens for a Better Env’t, 444 U.S. 620, 634, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980) (overbreadth is “a question of law that involved no dispute about the characteristics of’ the law being challenged). Because additional discovery could not eliminate the narrow tailoring problems, as we have discussed above, the court was well within its rights to decide the First Amendment issues on the record before it. Cf. Sable Commc’ns of Cal., Inc. v. F.C.C., 492 U.S. 115, 129, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989) (affirming district court’s grant of preliminary injunction where the pre-enactment record contained “no legislative findings that would justify us in concluding that there is no constitutionally acceptable less restrictive means, *560 short of a total ban, to achieve the Government’s interest”); Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1274 (11th Cir.2005) (invalidating content-based sign regulation without discovery because “[t]he First Amendment questions [were] purely legal” and “only minimally intertwined with the facts”).
The City’s remaining justification for discovery — that it was necessary to show that pregnancy centers engage in commercial speech — is also unavailing. The district court found that the law on its face regulated protected, non-commercial speech. The individual characteristics of any particular pregnancy center would thus be irrelevant to this determination, a fact the City itself acknowledged during a hearing on the parties’ motions:
The Court: [T]he City Council wasn’t concerned about this individual center. There’s the legislative history. They were concerned about the generalities of it. So I don’t see where we would advance the ball one way or the other on the facial challenge by knowing what these particular people [i.e. the plaintiffs] did.
Counsel for the City: I agree with you. J.A. 130.
Moreover, as the district court recognized, even if some speech of regulated pregnancy centers included commercial elements, strict scrutiny would still apply because those elements would be “inextricably intertwined” with otherwise fully protected speech. Thus, for example, an advertisement offering a pregnant woman the opportunity to “see a picture of your baby” is both an offer to provide a service — a sonogram — and a political statement regarding the status of fetal life. Contrary to the dissent’s claims, the commercial and political aspects of a statement of this kind cannot be “easily separated,” as the dissent suggests. Indeed, the Supreme Court rejected precisely this argument in Riley in the course of holding that solicitations by professional fundraisers were not commercial speech. See Riley, 487 U.S. at 796, 108 S.Ct. 2667 (“[W]e cannot parcel out the speech, applying one test to one phrase and another test to another phrase. Such an endeavor would be both artificial and impractical. Therefore, we apply our test for fully protected expression”). Thus, even if additional discovery could somehow uncover facts suggesting that the Pregnancy Center itself or other pregnancy centers engaged in some amount of commercial speech (because, for instance, they may have charged money for some of their services), the district court’s reasoning would still have led to the application of strict scrutiny.
In sum, the city has been unable to point to any item of discovery or fact that would have assisted the district court in addressing the issues that have been appealed.
Finally, the City’s contention that the district court abused its discretion in dismissing the Pregnancy Center’s remaining counts without prejudice, rather than with prejudice, lacks merit. The district court did not reach the merits of the Pregnancy Center’s other claims, which on their face were not frivolous. It simply dismissed those counts because it awarded the Pregnancy Center all the relief that it had requested, based on its ruling on the free speech count.
For the reasons given, the judgment of the district court is

AFFIRMED.

. The Baltimore City Health Department enacted a regulation clarifying certain aspects of its enforcement of the ordinance, which it made effective July 15, 2010. Among other things, the regulation provides a definition of "non-directive and comprehensive birth-control services” and allows a pregnancy center to indicate on its disclaimer sign what birth-control services it does provide and/or refer for. The regulation’s definition of "non-directive and comprehensive birth-control services” was subsequently amended to define that term as including all "birth-control services which only a licensed health care professional may prescribe or provide.”

. The complaint names as defendants the Mayor and City Council of Baltimore, the Baltimore Health Department, Stephanie Rawlings-Blake, in her official capacity as Mayor of Baltimore, and Olivia Farrow, in her official capacity as Acting Baltimore City Health Commissioner. Dr. Oxiris Barbot became Baltimore City Health Commissioner on June 7, 2010, and he was then substituted as a defendant in place of Olivia Farrow.

. The Supreme Court has not recognized the notion that "professional speech,” unconnected to state regulation or licensing, is entitled to less protection under the First Amendment. We have, however, recognized that the government may regulate the professions and, as necessary to serve the state’s interest in such regulation, so regulate the professionals' speech. See Accountant's Soc’y of Va. v. Bowman, 860 F.2d 602, 603-05 (4th Cir. 1988) (noting that "governmental regulation of the professions is constitutional if the regulations have a rational connection with the applicant's fitness or capacity to practice the profession” (internal quotation marks omitted)). The City, however, does not claim that the Pregnancy Center’s employees and volunteers are state-regulated professionals.

. Strict scrutiny would generally be appropriate also because the Ordinance is not viewpoint neutral. By its terms, Ordinance 09-252 does not apply to all speakers who "provide information” about pregnancy. Rather, the law targets only those speakers who refuse to provide or refer for abortions or certain types of birth control. This qualification effectively limits the law’s disclosure obligations to organizations whose moral or religious codes lead them to oppose abortion and birth control. Cf. Sorrell v. IMS Health, Inc., - U.S. -, 131 S.Ct. 2653, 2663, 180 L.Ed.2d 544 (2011) (concluding that law was speaker- and content-based where the "practical effect" was to burden one group of speakers). These speakers are disfavored because they have chosen, for whatever reason, not to adopt the City’s preferred perspective on appropriate reproductive decisions. Although it is true that disparate impact alone is not enough to make a law viewpoint discriminatory, see Hill v. Colorado, 530 U.S. 703, 724-25, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000), the text of the ordinance and its legislative history demonstrate that it burdens only the expression of pro-life speakers, as it was intended to do. •