<u>**PUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 11-1314**

_____

CENTRO TEPEYAC,

        Plaintiff – Appellee,

    v.

MONTGOMERY COUNTY; MONTGOMERY COUNTY COUNCIL, in its
capacity as the Montgomery County Board of Health,

        Defendants – Appellants,

    and

MONTGOMERY COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES;
MARC HANSEN, Acting County Counsel,

        Defendants.

_____

**No. 11-1336**

_____

CENTRO TEPEYAC,

        Plaintiff – Appellant,

    v.

MONTGOMERY COUNTY; MONTGOMERY COUNTY COUNCIL, in its
capacity as the Montgomery County Board of Health,

        Defendants – Appellees,

    and

MONTGOMERY COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES;
MARC HANSEN, Acting County Counsel,

Defendants.

---

Appeals from the United States District Court for the District of Maryland, at Greenbelt. Deborah K. Chasanow, Chief District Judge. (8:10-cv-01259-DKC)

---

ARGUED: December 6, 2012                    Decided: July 3, 2013

---

Before TRAXLER, Chief Judge, and WILKINSON, NIEMEYER, MOTZ, KING, GREGORY, SHEDD, DUNCAN, AGEE, DAVIS, KEENAN, WYNN, FLOYD, and THACKER, Circuit Judges.

---

Affirmed by published opinion. Judge King wrote the majority opinion, in which Chief Judge Traxler and Judges Wilkinson, Motz, Gregory, Duncan, Davis, Keenan, Wynn, Floyd, and Thacker joined. Judge Wilkinson wrote a concurring opinion. Judge Niemeyer wrote a dissenting opinion, in which Judges Shedd and Agee joined.

---

**ARGUED:** Clifford Lee Royalty, COUNTY ATTORNEY'S OFFICE, Rockville, Maryland, for Appellants/Cross-Appellees. Mark L. Rienzi, COLUMBUS SCHOOL OF LAW, CATHOLIC UNIVERSITY OF AMERICA, Washington, D.C., for Appellee/Cross-Appellant. **ON BRIEF:** Marc P. Hansen, County Attorney, Edward B. Lattner, Chief, Division of Human Resources & Appeals, COUNTY ATTORNEY'S OFFICE, Rockville, Maryland, for Appellants/Cross-Appellees. Steven H. Aden, Matthew S. Bowman, M. Casey Mattox, ALLIANCE DEFENSE FUND, Washington, D.C.; Robert Destro, COLUMBUS SCHOOL OF LAW, CATHOLIC UNIVERSITY OF AMERICA, Washington, D.C.; John R. Garza, GARZA, REGAN & ASSOCIATES, Rockville, Maryland; Robert Michael, SHADOAN, MICHAEL & WELLS LLP, Rockville, Maryland, for Appellee/Cross-Appellant.

---

KING, Circuit Judge:

These cross-appeals demand our review of the district court's decision to preliminarily enjoin enforcement of one portion of a Montgomery County Resolution requiring limited service pregnancy resource centers to post signs disclosing (1) that "the Center does not have a licensed medical professional on staff," and (2) that "the Montgomery County Health Officer encourages women who are or may be pregnant to consult with a licensed health care provider." See Centro Tepeyac v. Montgomery Cnty., 779 F. Supp. 2d 456, 469-72 (D. Md. 2011). The injunction encompasses the second statement compelled by the Resolution, but not the first one — leaving no party to this dispute fully satisfied. Because the district court acted well within its discretion, however, we affirm its decision.[1]

---

[1] These appeals were initially heard by a three-judge panel of our Court. The panel majority affirmed the district court's preliminary injunction decision with respect to the Resolution-mandated second statement, but reversed as regards the first. See Centro Tepeyac v. Montgomery Cnty., 683 F.3d 591 (4th Cir. 2012). The panel opinion was subsequently vacated, however, with the grant of rehearing en banc. See Centro Tepeyac v. Montgomery Cnty., No. 11-1314(L) (4th Cir. Aug. 15, 2012).

I.

A.

On February 2, 2010, the Montgomery County Council, acting as the Montgomery County Board of Health, adopted the Resolution at issue, No. 16-1252. See J.A. 198-200.[2] The Resolution applies to limited service pregnancy resource centers, defined therein as

> an organization, center, or individual that:
>
> > (A) has a primary purpose to provide pregnancy-related services;
> >
> > (B) does not have a licensed medical professional on staff; and
> >
> > (C) provides information about pregnancy-related services, for a fee or as a free service.

Id. at 199. The Resolution requires each such center to "post at least 1 sign in the Center" making the specified disclosures, i.e., that "the Center does not have a licensed medical professional on staff," and that "the Montgomery County Health Officer encourages women who are or may be pregnant to consult with a licensed health care provider." Id. The sign must be "written in English and Spanish," "easily readable," and "conspicuously posted in the Center's waiting room or other area where individuals await service." Id.

---

[2] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in these appeals.

The Resolution relays the County Council's finding, following a December 1, 2009 public hearing, "that requiring a disclaimer for certain pregnancy resource centers is necessary to protect the health of County residents." J.A. 198. Explaining that finding, the Resolution identifies the Council's "concern [as being] that clients may be misled into believing that a Center is providing medical services when it is not," and that "[c]lients could therefore neglect to take action (such as consulting a doctor) that would protect their health or prevent adverse consequences, including disease, to the client or the pregnancy." Id.

The Montgomery County Department of Health and Human Services is charged with "investigat[ing] each complaint alleging a violation of [the Resolution] and tak[ing] appropriate action, including issuing a civil citation when compliance cannot be obtained otherwise." J.A. 200. Prior to a citation, however, the Department must "issue a written notice ordering the Center to correct the violation within either" "10 days of the notice" or "a longer period that the Department specifies in the notice." Id. Where there are "repeated violations" of the Resolution, "[t]he County Attorney may file an action in a court with jurisdiction to enjoin [those] violations." Id.

5

B.

On May 19, 2010, Centro Tepeyac initiated this 42 U.S.C. § 1983 action in the District of Maryland, claiming that the Resolution is unconstitutional as applied and on its face, under both the First and Fourteenth Amendments. The Complaint identifies Centro Tepeyac as a not-for-profit corporation operating a limited service pregnancy resource center located in the Silver Spring area of Montgomery County. See Complaint ¶¶ 11, 45-47. According to the Complaint, Centro Tepeyac "does not charge women for its services," which include "pregnancy testing, referral services, and confidential discussion of pregnancy options," plus "information on parenting," "post-abortion guidance," and "practical support in the form of diapers, baby clothes and other needed items." Id. ¶¶ 12-13. The Complaint asserts that Centro Tepeyac "does not refer or provide for abortion" or birth-control services other than "abstinence and natural family planning." Id. ¶ 14. The Complaint also alleges, inter alia, that the Resolution is discriminatorily "aimed at pro-life pregnancy resource centers" such as Centro Tepeyac, and that the Resolution forces Centro Tepeyac "to suggest that [it is] not qualified to discuss pregnancy options or to provide help to pregnant women." Id. ¶¶ 30, 50. Attached as exhibits to the Complaint are a declaration of Centro Tepeyac's Executive Director corroborating

6

several of the Complaint's factual allegations; an unofficial version of the Resolution; a press release issued by the Montgomery County Council announcing its adoption of the Resolution; and miscellaneous documents, including portions of the Resolution's legislative record.

The Complaint seeks preliminary and permanent injunctions barring enforcement of the Resolution, as well as monetary damages and litigation costs. With the Complaint, Centro Tepeyac filed a memorandum in support of its request for a preliminary injunction. In response, on June 3, 2010, the four defendants — including Montgomery County and the County Council (together, the "County") — submitted an opposition to the preliminary injunction request, combined with a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The sole exhibit to the County's submission was a copy of the Resolution as adopted. Thereafter, on June 10, 2010, Centro Tepeyac filed a freestanding motion for a preliminary injunction. The district court conducted a motions hearing on July 23, 2010, and issued its preliminary injunction decision on March 15, 2011.

In these interlocutory cross-appeals, the County contests the district court's decision to the extent that it enjoins enforcement of the Resolution's compelled pronouncement that

7

"the Montgomery County Health Officer encourages women who are or may be pregnant to consult with a licensed health care provider." See Centro Tepeyac, 779 F. Supp. 2d at 471-72. Meanwhile, Centro Tepeyac challenges the decision insofar as it leaves in place the Resolution's requirement for limited service pregnancy resource centers to disclose that "the Center does not have a licensed medical professional on staff." See id. We possess jurisdiction over these appeals pursuant to 28 U.S.C. § 1292(a)(1) (providing, in pertinent part, that "the courts of appeals shall have jurisdiction of appeals from . . . [i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions").[3]

## II.

### A.

We review for abuse of discretion the district court's preliminary injunction decision. See Dewhurst v. Century

---

[3] Also by its March 15, 2011 decision, the district court granted in part the defendants' Rule 12(b)(6) motion, dismissing Centro Tepeyac's First and Fourteenth Amendment claims against the Montgomery County Department of Health and Human Services and County Attorney Marc Hansen. See Centro Tepeyac, 779 F. Supp. 2d at 461. The court refused, however, to dismiss the same claims as to the remaining two defendants, whom we refer to as the "County." See id. at 461-69. Apparently recognizing the limits of our jurisdiction over these interlocutory appeals, the parties do not challenge the disposition of the Rule 12(b)(6) motion.

<u>Aluminum Co.</u>, 649 F.3d 287, 290 (4th Cir. 2011). As we have expounded,

> [t]he decision to issue or deny a preliminary injunction is committed to the sound discretion of the trial court. That decision will not be disturbed on appeal unless the record shows an abuse of that discretion, regardless of whether the appellate court would, in the first instance, have decided the matter differently.

<u>Quince Orchard Valley Citizens Ass'n v. Hodel</u>, 872 F.2d 75, 78 (4th Cir. 1989). In conducting our assessment, "we review the district court's factual findings for clear error and review its legal conclusions de novo." <u>Pashby v. Delia</u>, 709 F.3d 307, 319 (4th Cir. 2013). We may find an abuse of discretion if the court "appl[ied] an incorrect preliminary injunction standard," "rest[ed] its decision on a clearly erroneous finding of a material fact," or "misapprehend[ed] the law with respect to underlying issues in litigation." <u>Quince Orchard Valley</u>, 872 F.2d at 78 (internal quotation marks omitted). Simply put, however, the court committed no such error here.

First of all, the district court recognized the principle that "[a] preliminary injunction is an extraordinary remedy." <u>Centro Tepeyac</u>, 779 F. Supp. 2d at 469 (internal quotation marks omitted); <u>see</u> <u>Direx Israel, Ltd. v. Breakthrough Med. Corp.</u>, 952 F.2d 802, 811 (4th Cir. 1991) ("Federal decisions have uniformly characterized the grant of interim relief as an extraordinary remedy involving the exercise of a very far-reaching power,

9

which is to be applied only in the limited circumstances which clearly demand it." (alteration and internal quotation marks omitted)). The court also appropriately employed the preliminary injunction standard recently spelled out by the Supreme Court in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008). Under the Winter standard, the movant "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." 555 U.S. at 20.

Assessing the merits of Centro Tepeyac's claims, pertinent to the first Winter factor, the district court focused on the First Amendment theory "that the Resolution requires [Centro Tepeyac] to say something it might not otherwise say" and thus constitutes a content-based regulation of speech. See Centro Tepeyac, 779 F. Supp. 2d at 462 & n.5 (citing Riley v. Nat'l Fed'n of the Blind of N.C., Inc., 487 U.S. 781, 795 (1988) ("Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech.")). The court observed that content-based speech regulations ordinarily are subject to strict scrutiny, but that lesser degrees of scrutiny may apply where the speech at issue is, inter alia, commercial or professional. See id. at 462-68; see also, e.g., Turner

10

Broad. Sys., Inc. v. FCC, 512 U.S. 622, 642 (1994) (explaining that "[l]aws that compel speakers to utter or distribute speech bearing a particular message are [generally] subject to the [most exacting scrutiny]"); Zauderer v. Office of Disciplinary Counsel of the Supreme Court, 471 U.S. 626, 651 (1985) (recognizing that disclosure requirements aimed at misleading commercial speech need only survive rational basis scrutiny, by being "reasonably related to the State's interest in preventing deception of customers"); Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y., 447 U.S. 557, 566 (1980) (concluding that restrictions on nonmisleading commercial speech concerning lawful activity must withstand intermediate scrutiny, by "directly advanc[ing]" a "substantial" governmental interest and being "no[] more extensive than is necessary to serve that interest"); Moore-King v. Cnty. of Chesterfield, Va., 708 F.3d 560, 569 (4th Cir. 2013) ("Under the professional speech doctrine, the government can license and regulate those who would provide services to their clients for compensation without running afoul of the First Amendment.").

Because it could not determine otherwise on the undeveloped record before it, the district court was constrained to accept that the speech regulated by the Resolution is neither commercial nor professional. In that regard, the court observed that the County had not yet "taken any definite position as to

11

whether the Resolution regulates commercial speech," and that there currently was "no indication that [Centro Tepeyac] is acting out of economic interest." Centro Tepeyac, 779 F. Supp. 2d at 463. The court also noted that, "[e]ven if some aspects of [Centro Tepeyac's] speech were categorized as commercial, the facts alleged suggest that such commercial speech would at least be 'intertwined with [fully protected] speech,'" in any event triggering strict scrutiny. Id. at 464 n.7 (quoting Riley, 487 U.S. at 796). Further, the court deemed it impossible to rule "at this stage that the Resolution is merely a regulation of a profession with incidental effects on speech." Id. at 467.

Thus applying strict scrutiny, the district court proceeded to analyze whether "the Resolution is '1) narrowly tailored to 2) promote a compelling government interest.'" Centro Tepeyac, 779 F. Supp. 2d at 468 (quoting PSINet, Inc. v. Chapman, 362 F.3d 227, 233 (4th Cir. 2004)). Starting with the compelling interest question, the court determined that "[i]t may be that the government has a compelling interest in ensuring that its citizenry are able to obtain needed medical care," and that "[t]he interest in ensuring patients obtain appropriate medical care might fall within the ambit of the state's broader interest in preserving public health." Id. (citing, inter alia, Varandani v. Bowen, 824 F.2d 307, 311 (4th Cir. 1987) (recognizing, in the due process context, "the government's

12

compelling interest in assuring safe health care for the public")).

Nevertheless, the district court also concluded, with regard to narrow tailoring, that the County had "not shown, based on the facts alleged in the complaint, that the second portion of the disclaimer required by the Resolution, which 'encourages women who are or may be pregnant to consult with a licensed health care provider,'" is narrowly tailored to promote the County's compelling interest. Centro Tepeyac, 779 F. Supp. 2d at 468 (citing United States v. Playboy Entm't Grp., Inc., 529 U.S. 803, 813 (2000) ("If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative.")). The court was particularly concerned that, in light of the first compelled statement (that "the Center does not have a licensed medical professional on staff"), the second statement may constitute "unneeded speech," because the County's interest in ensuring that women will not forgo medical treatment "might be satisfied once women were aware that [a pregnancy resource center does] not staff a medical professional." Id. Additionally, the court noted that "several options less restrictive than compelled speech could be used to encourage pregnant women to see a licensed medical professional," citing as examples that the County "could post notices [in its own facilities] encouraging women to see a

13

doctor" or "launch a public awareness campaign." Id. at 469 n.9.

On the other hand, the district court ruled that "the record is at least colorable at this stage to suggest that [the first portion of the Resolution-mandated disclaimer] is narrowly tailored to meet the [County's stated] interest." Centro Tepeyac, 779 F. Supp. 2d at 471. The court explained that the first compelled statement merely notifies patients "that a licensed medical professional is not on staff," "does not require any other specific message," and "in neutral language states the truth." Id. Moreover, the court indicated that the existing evidence was altogether inadequate to demonstrate that less restrictive alternatives proposed by Centro Tepeyac "would be at least as effective in achieving the legitimate purpose that the [Resolution] was enacted to serve." See Reno v. ACLU, 521 U.S. 844, 874 (1997).

Consequently, the district court determined that Centro Tepeyac had failed to satisfy its burden of showing, as to the initial factor of the Winter preliminary injunction standard, that the Resolution's first compelled statement "will fail to survive strict scrutiny review." Centro Tepeyac, 779 F. Supp. 2d at 471; cf. Beal v. Stern, 184 F.3d 117, 130 (2d Cir. 1999) ("We are not prepared to find on this record that appellants have shown a clear likelihood of success on the merits of either

14

[First Amendment] claim. As to narrow tailoring, we simply do not have sufficient evidence to determine whether means chosen by the [government] are substantially broader than necessary."). But because Centro Tepeyac had demonstrated likely success on the merits of its First Amendment claim with respect to the second compelled statement, the court continued its Winter analysis with respect to that portion of the Resolution.

Addressing the second Winter factor (the likelihood of irreparable harm), the district court acknowledged that, "'in the context of an alleged violation of First Amendment rights, a plaintiff's claimed irreparable harm is inseparably linked to the likelihood of success on the merits of plaintiff's First Amendment claim.'" Centro Tepeyac, 779 F. Supp. 2d at 471 (quoting WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave, 553 F.3d 292, 298 (4th Cir. 2009)); see Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd., 354 F.3d 249, 261 (4th Cir. 2003) ("[T]he Supreme Court has explained that 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976))). Recognizing that there was "no reason to depart from the ordinary rule in this case," the district court ruled that Centro Tepeyac had "shown irreparable harm." Centro Tepeyac, 779 F. Supp. 2d at 471.

The district court jointly considered the third and fourth Winter factors (the balance of equities and the public interest), invoking precedent deeming those "factors established when there is a likely First Amendment violation." See Centro Tepeyac, 779 F. Supp. 2d at 471-72. That precedent counsels that "a state is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction." Giovani Carandola, Ltd. v. Bason, 303 F.3d 507, 521 (4th Cir. 2002) (internal quotation marks omitted). It also teaches that "upholding constitutional rights surely serves the public interest." Id.

Having concluded that Centro Tepeyac satisfied each of the four Winter factors with respect to the second compelled statement, the district court enjoined enforcement of that portion of the Resolution only. The court specified that the County "will be enjoined from enforcing the Resolution's requirement that [limited service pregnancy resource centers] post a sign indicating that 'the Montgomery County Health Officer encourages women who are or may be pregnant to consult with a licensed health care provider.'" Centro Tepeyac, 779 F. Supp. 2d at 472. That is, consistent with its determination that the second compelled statement likely is not narrowly tailored because it constitutes "unneeded speech," the court

16

prohibited the County from requiring any center (and not merely Centro Tepeyac) to make such disclosure. See <u>United States v. Stevens</u>, 130 S. Ct. 1577, 1587 (2010) (instructing that facial invalidation is appropriate where "no set of circumstances exists under which [the law] would be valid, or [where the law] lacks any plainly legitimate sweep," and, alternatively, where "a substantial number of [the law's] applications are unconstitutional, judged in relation to the [law's] plainly legitimate sweep" (citations and internal quotation marks omitted)).[4]

---

[4] Additionally, the district court considered and rejected Centro Tepeyac's contention that the Resolution should be preliminarily enjoined for being unconstitutionally vague. See <u>Centro Tepeyac</u>, 779 F. Supp. 2d at 470 (recognizing that "[a] potentially vague law that interferes with First Amendment rights deserves greater scrutiny 'because of its obvious chilling effect on free speech'" (quoting <u>Reno</u>, 521 U.S. at 872)). The court determined that, although "[a] regulation may be deemed impermissibly vague if it 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits,'" <u>id.</u> (quoting <u>Hill v. Colorado</u>, 530 U.S. 703, 732 (2000)), Centro Tepeyac's allegation of undefined phrases in the Resolution (such as "has a primary purpose" and "medical-related services") was insufficient to establish vagueness, <u>id.</u> at 470-71. As the court explained, "[a] failure by a statute to define all of its terms does not necessarily render it impermissibly vague." <u>Id.</u> at 471 (citing <u>Rose v. Locke</u>, 423 U.S. 48, 50 (1975) ("Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.")). The court emphasized that, "[e]ven when a regulation implicates the First Amendment, 'perfect clarity and precise guidance have never been required.'" <u>Id.</u> (quoting <u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 794 (1989)).

17

In these circumstances, we cannot say that the district court in any way abused its discretion. The court applied a correct preliminary injunction standard, made no clearly erroneous findings of material fact, and demonstrated a firm grasp of the legal principles pertinent to the underlying dispute. Indeed, we commend the court for its careful and restrained analysis.

B.

Our good dissenting colleagues — who condemn the district court's decision not to enjoin the first compelled statement — clearly "would, in the first instance, have decided the matter differently"; that is no justification, however, for reversal. See Quince Orchard Valley, 872 F.2d at 78. As the Supreme Court has instructed, where a preliminary injunction is under an interlocutory examination, determining whether the district court abused its discretion "is the extent of our appellate inquiry." See Doran v. Salem Inn, Inc., 422 U.S. 922, 934 (1975). The dissenters simply fail to grasp that controlling principle when they suggest that our affirmance herein is incompatible with today's separate opinion in another Maryland pregnancy center-compelled disclosure case — a case that, unlike this one, came before us only after the district court entered a permanent injunction on the basis of a summary judgment award. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of

18

Balt., No. 11-1111(L), slip op. at 60-61 (4th Cir. July __, 2013) (en banc) (explaining that, because "the district court improperly denied the City essential discovery and otherwise flouted the Federal Rules of Civil Procedure . . . , we vacate the judgment and remand for further proceedings").

Meanwhile, the dissenters search in vain for a legal error to call an abuse of discretion. First, invoking the Supreme Court's decision in Riley, the dissenters assert that the district court erred "by dividing its assessment of the Resolution and approving one sentence but not the other." Post at 28 (Niemeyer, J., dissenting). Riley, however, is irrelevant to the question of whether a court may evaluate separately the constitutionality of two parts of a disclosure requirement. See Riley, 487 U.S. at 796 (addressing different issue of "what level of scrutiny to apply" where compelled speech is commercial but "inextricably intertwined with otherwise fully protected speech"). Furthermore, upon careful consideration, the district court soundly determined "that there is nothing in the Resolution to dispel [Maryland's] ordinary presumption of severability." Centro Tepeyac, 779 F. Supp. 2d at 470 (citing Montrose Christian Sch. Corp. v. Walsh, 770 A.2d 111, 129 (Md. 2001), for the proposition that, "[u]nder Maryland law, there is a strong presumption that if a portion of an enactment is found to be invalid, the intent of the legislative body is that such

19

portion be severed" (alterations and internal quotation marks omitted)).

The dissenters also posit that the district court's narrow tailoring rulings on the first and second compelled statements were inconsistent, in that "the court appropriately tested the second sentence's constitutionality against a range of less-restrictive alternatives" that "applied equally to" the first. Post at 28. In doing so, the dissenters obscure the court's primary reason for its second-compelled-statement ruling: that the first compelled statement appeared to render the second "unneeded speech." Centro Tepeyac, 779 F. Supp. 2d at 468.

Finally, the dissenters assert that the district court erroneously deemed the first compelled statement to be narrowly tailored solely because it is "'neutral'" and "'true.'" See post at 29. But the court's actual reasoning was this:

> As discussed above, the interest in public health and access to medical care may be described as compelling. And, the record is at least colorable at this stage to suggest that the disclaimer is narrowly tailored to meet the interest: only requiring those [limited service pregnancy resource centers] to post a notice that a licensed medical professional is not on staff. It does not require any other specific message and in neutral language states the truth.

Centro Tepeyac, 779 F. Supp. 2d at 471. The district court's reasoning is entirely consistent with the principle, recognized by the court, see id. at 468, that "[a]ction taken to remedy an 'evil' will be considered 'narrowly tailored if it targets and

20

eliminates no more than the exact source of the evil it seeks to remedy.'" Columbia Union Coll. v. Clarke, 159 F.3d 151, 157 n.2 (4th Cir. 1998) (quoting Frisby v. Schultz, 487 U.S. 474, 485 (1988)). Accordingly, there is no merit to the dissenters' view that the court "misapprehend[ed] the law with respect to underlying issues in litigation." See Quince Orchard Valley, 872 F.2d at 78 (internal quotation marks omitted).

## III.

Pursuant to the foregoing, we affirm the preliminary injunction decision rendered by the district court.

AFFIRMED

WILKINSON, Circuit Judge, concurring:

I concur in Judge King's opinion affirming the district court's decision to preliminarily enjoin the second disclaimer mandated by the Montgomery County Resolution but not the first. Compelled speech is not an all-or-nothing matter, and this case illustrates why. Because the dangers of compelled speech are real and grave, courts must be on guard whenever the state seeks to force an individual or private organization to utter a statement at odds with its most fundamental beliefs. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt., No. 11-1111 (4th Cir. 2013) (en banc) (Wilkinson, J., dissenting). But in exercising its broad police power to regulate for the health and safety of its citizens, the state must also enjoy some leeway to require the disclosure of the modicum of accurate information that individuals need in order to make especially important medical and personal decisions.

The first disclosure mandated by the Montgomery County Resolution -- that a center "does not have a licensed medical professional on staff" -- falls within the bounds of the state's authority to safeguard its citizens' welfare. It requires the centers merely to state both briefly and accurately the professional credentials of their staff rather than to present abortion and birth control as viable options right at the outset

22

of their personal interactions with their clients and notwithstanding their beliefs to the contrary. And it relies on the common-sense notion that pregnant women should at least be aware of the qualifications of those who wish to counsel them regarding what is, among other things, a medical condition.

Pregnancy can be a time of great joy and anticipation -- for both parents. But it can also be a time of apprehension and medical anxiety. I thus do not think it remiss for the state to require organizations like Centro Tepeyac to provide a scrap of accurate medical information to pregnant women at what can be a fraught moment, information that can neutrally assist with their search for licensed medical care.

My esteemed colleagues on both sides of this question insist upon seeing the <u>Baltimore Pregnancy Center</u> case and the <u>Centro Tepeyac</u> case as the same, but they decidedly are not. In the <u>Baltimore</u> case, the Center was forced to convey an ideologically freighted message, one directly referencing abortion in a manner directly contrary to the Center's views. In the <u>Centro Tepeyac</u> case, the required disclosure involved a scintilla of manifestly neutral and medically accurate information in a manner likely to reach the intended recipient. While my dissenting colleague complains that other sources, such as "internet sites, bookstores, or houses of worship . . . are left unregulated," a woman would be far less likely to turn to

23

these sources under the impression that she would find there personal interaction with a "licensed medical professional." Post at 36.

For pregnancy centers like those in Baltimore and Centro Tepeyac, opposition to abortion and support for healthy pregnancies are core values. Seen in this light, the compelled speech in Baltimore involves the state imprinting its ideology on an unwilling speaker. The compelled speech in Centro Tepeyac involves the de minimis exercise of the basic state responsibility to protect the health of its citizens, nowhere more so than in periods of possible confusion and stress.

This distinction makes all the difference. In Wooley v. Maynard, 430 U.S. 705, 715 (1977), the Court quite explicitly noted that state action "which forces an individual . . . to be an instrument for fostering public adherence to an ideological point of view" was unacceptable under the First Amendment. And W. Va. State Bd. of Educ. v. Barnette, 319 U.S. 624 (1943), rested on the principle that the state cannot press ideological speech onto the lips of nonconforming individuals. The state tried to do exactly this in the Baltimore case, but it did not overstep in the upheld disclosure here.

These two cases underscore the drawbacks of addressing in stark absolutes a problem that is one of degree and gradation. The fact that litigants bring before courts a set of strongly

24

competing interests and strenuously opposing views does not mark the perspective of either side as illegitimate. On a problem this difficult, courts should not fall off the cliff in either direction.

For these reasons, I think the first disclaimer mandated by the Resolution is permissible. And for the reasons given by the district court, I also agree with its decision to preliminarily enjoin the second disclaimer as an unconstitutional form of compelled speech.

NIEMEYER, Circuit Judge, dissenting:

The Montgomery County Council enacted, at the urging of pro-choice groups, Resolution 16-1252, requiring pregnancy centers that provide pregnancy advice but not medical services to display a sign on their premises, stating that "the Center does not have a licensed medical professional on staff" and "the Montgomery County Health Officer encourages women who are or may be pregnant to consult with a licensed health care provider." All of the pregnancy centers in Montgomery County that provide abortions have licensed medical professionals on staff. The Resolution addressed the County Council's concern that clients of pregnancy centers without licensed medical professionals are being "misled into believing that a Center is providing medical services when it is not."

Centro Tepeyac is a nonprofit pregnancy center that provides information about pregnancy and other services to pregnant women. The center does not, however, provide abortions, comprehensive birth control, or other medical services, nor does it have any licensed medical professional on staff. Shortly after Resolution 16-1252 was enacted, Centro Tepeyac commenced this action challenging the law under the First Amendment.

In its assessment of the Resolution, the district court appropriately noted that the entire mandated message was

26

compelled speech and was therefore content-based. Centro Tepeyac v. Montgomery Cnty., 779 F. Supp. 2d 456, 462 (D. Md. 2011). Recognizing that commercial speech is subject to a lower level of scrutiny, the court found that Resolution 16-1252 applied at least in part to noncommercial speech and therefore was subject to strict scrutiny. Id. at 463-65. In applying strict scrutiny to the entire mandated speech, the court said, "[I]t cannot be said as a matter of law that the entire Resolution was narrowly tailored to promote [the County's compelling government interest in preserving public health]." Id. at 468.

As far as this analysis went, the district court applied established First Amendment jurisprudence. But then it abandoned that course when it divided the mandated speech and assessed each sentence independently. As to the first sentence, the court found that it was narrowly tailored to serve the government's interest in public health and therefore was likely constitutional, explaining that "[i]t does not require any other specific message [than to announce that a licensed medical professional is not on staff] and in neutral language states the truth." Centro Tepeyac, 779 F. Supp. 2d at 471. As to the second sentence, it found that it was "unneeded" to serve the government interest, was not "the least restrictive means of achieving [the] relevant government interest," and therefore was

27

likely unconstitutional. Id. at 468-69. The court backed up its assessment of the second sentence by listing "several options less restrictive than compelled speech." Id. at 469 n.9.

Surprisingly, the majority affirms the district court's analysis and judgment, concluding that the court "demonstrated a firm grasp of the legal principles pertinent to the underlying dispute." Ante, at 18. But, by dividing its assessment of the Resolution and approving one sentence but not the other, the district court effectively and impermissibly rewrote the message compelled by the Resolution, reducing it to a form that the court believed would make it constitutional. Compounding the error, the district court engaged in something novel to First Amendment jurisprudence -- a selective application of strict scrutiny -- which is inappropriate. See Riley v. Nat'l Fed'n of the Blind of N.C., Inc., 487 U.S. 781, 796 (1988) ("[W]e cannot parcel out the speech, applying one test to one phrase and another test to another phrase"). One need only consider the district court's entire opinion to see the infirmity. Whereas the court appropriately tested the second sentence's constitutionality against a range of less-restrictive alternatives, it did not do so for the first. In fact, the alternatives identified by the district court applied equally to both sentences. Rather than recognize this basic inconsistency,

the majority affirms the analysis without explanation. Finally, the majority approves the inappropriate reasons given by the district court for upholding the first sentence -- that it was "neutral" and "true" -- without providing any legal justification.

With its affirmance, the majority places itself in a curious position in view of its holding today in <u>Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore</u>, \_\_ F.3d \_\_, No. 11-1111(L) (4th Cir. July \_\_, 2013) (en banc). In <u>Greater Baltimore Center</u>, the majority concluded that the plaintiffs had not demonstrated, as a matter of law, that an ordinance compelling certain pregnancy centers to post a sign stating that the center did not provide or refer for abortion was unconstitutional, because facts as to the applicability of the ordinance and its effect were either disputed or factually undeveloped. The record in <u>Greater Baltimore Center</u> contained the full legislative history. Yet, in this case, where the Resolution mandates similarly, although less explicitly, that the pregnancy center post a sign about the limitations of its services, the majority affirms the district court's conclusion that the order is likely unconstitutional as a matter of law, based on the same record that existed in <u>Greater Baltimore Center</u>.

29

By affirming the district court's decision, the majority effectively approves novel and erroneous First Amendment principles. It upholds the ruling that one sentence of the compelled speech is likely unconstitutional while the other is likely constitutional, even though both are mandated and are subject to strict scrutiny. It also approves an analysis that is internally inconsistent. If the second sentence was not narrowly tailored because it was not the least restrictive means of serving the County's interests, so must the first sentence not be the least restrictive means available, as the alternatives identified by the district court applied equally to both sentences. And finally, the majority approves the totally new and legally inappropriate reasons given by the district court for finding that the first sentence satisfied the narrowly-tailored test -- that the mandated speech was "neutral" and "true."

As does the majority, I would affirm the district court's conclusion that Resolution 16-1252 compelled speech; that it is subject to strict scrutiny; and that, as a whole, it is not narrowly tailored to serve the government's asserted compelling interests. But I would also conclude that even if the first sentence were considered independently, it is unconstitutional for the same reasons that the whole message and the second sentence taken alone are unconstitutional. In my view, the

district court "misapprehend[ed] the law" with respect to (1) its authority to parse the compelled message and (2) its conclusion that the first sentence was narrowly tailored. See Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel, 872 F.2d 75, 78 (4th Cir. 1989). Because of these legal errors, its ruling amounted to an abuse of discretion. See id.

I

As a matter of background, Centro Tepeyac is a Montgomery County nonprofit corporation that provides information and services to pregnant women, including free pregnancy tests, diapers, baby clothes, parenting assistance, and confidential conversations about pregnancy options. Critically, Centro Tepeyac does not provide abortions, comprehensive birth control, or any other medical services, and it does not, therefore, have licensed medical professionals on staff. It commenced this action challenging Resolution 16-1252, contending that the Resolution compels it to speak in a manner that it would not otherwise choose to speak and therefore violates its First and Fourteenth Amendment rights.

Resolution 16-1252 requires that all pregnancy centers, defined as those (1) having "a primary purpose to provide pregnancy-related services"; (2) not having "a licensed medical professional on staff"; and (3) providing "information about

31

pregnancy-related services, for a fee or as a free service,"
conspicuously display a sign, stating that "the Center does not
have a licensed medical professional on staff" and "the
Montgomery County Health Officer encourages women who are or may
be pregnant to consult with a licensed health care provider."  A
violation of the Resolution is punishable as a Class A civil
violation.

II

At the outset, I agree with the district court and the
majority that the entire Resolution, as well as the second
sentence alone, likely violates Centro Tepeyac's First Amendment
rights.  I would go further and conclude additionally that when
the first sentence is considered alone, it also violates Centro
Tepeyac's First Amendment rights.

All agree that the first sentence compels speech and that
it is subject to strict scrutiny.  But then, in determining
whether the first sentence was narrowly tailored, the district
court accepted as compelling the County's stated interest in
addressing its concern "that clients may be misled into
believing that a Center is providing medical services when it is
not" and concluded:

> As discussed above, the interest in public health and
> access to medical care may be described as compelling.
> And, the record is at least colorable at this stage to

32

> suggest that the disclaimer is narrowly tailored to meet the interest:  only requiring those [pregnancy centers] to post a notice that a licensed medical professional is not on staff.  <u>It does not require any other specific message and in neutral language states the truth</u>.

<u>Centro Tepeyac</u>, 779 F. Supp. 2d at 471 (emphasis added).  This conclusion about how the first sentence is narrowly tailored is undoubtedly inconsistent with First Amendment principles.

The first reason the district court gave -- that the required speech "does not require any other specific message" -- is merely a positive evaluation about the content of the speech, essentially concluding that a pregnancy center should not find it troubling to speak the message.  But this overlooks that Centro Tepeyac does indeed object to being compelled to speak this mandated statement, for reasons relating to its mission.  The record also shows that several other pregnancy centers likewise objected to the mandated sign during hearings on the Resolution.  More specific to First Amendment jurisprudence, the court overlooked the fact that mandating speech is a content-based restriction on speech that infringes freedom by merely denying the regulated pregnancy centers' right to <u>not speak at all</u>.  <u>See</u> <u>Riley</u>, 487 U.S. at 796-97 ("[T]he First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what <u>not</u> to say").  "[T]he government, even with the purest of motives, may not substitute

33

its judgment as to how best to speak for that of speakers and listeners." Id. at 791.

The second reason the district court gave for finding the first sentence was narrowly tailored was that the mandated speech speaks "the truth" in neutral language. But this is also not a legitimate or sufficient justification for compelling speech. As the Supreme Court stated, "[The] general rule, that the speaker has the right to tailor the speech, applies not only to expressions of value, opinion, or endorsement, but equally to statements of fact," Hurley v. Irish-American Gay, Lesbian, & Bisexual Group of Boston, 515 U.S. 557, 573 (1995), even if the compelled statements are factually accurate, see Riley, 487 U.S. at 797-98.

In addition to its flawed analysis of the first sentence, the district court made another First Amendment error. It failed to address the available alternatives to compelling speech. This is a curious omission, given that the court ably identified alternatives that rendered the second sentence unconstitutional. See Centro Tepeyac, 779 F. Supp. 2d at 469 n.9. In fact, the very same available alternatives to the second sentence also apply to the first. This alone should require reversal of the district court's conclusion. See Thompson v. Western States Med. Ctr., 535 U.S. 357, 373 (2002)

34

("If the First Amendment means anything, it means that regulating speech must be a last -- not first -- resort").

At bottom, it is clear that the district court failed to apply the proper First Amendment analysis.

A correct assessment of whether the Resolution, including the first sentence of the mandated speech, was narrowly tailored is a question of law.  See Village of Schaumburg v. Citizens for a Better Env't, 444 U.S. 620, 634 (1980) (whether an ordinance is overbroad is "a question of law that involved no dispute about the characteristics of" the plaintiff).  And any casual assessment of the first sentence leads inevitably to the conclusion that it is not narrowly tailored and therefore is unconstitutional.

First, Resolution 16-1252 (and its first sentence) is overinclusive in that it applies to pregnancy centers regardless of whether they accurately represent whether they have a licensed medical professional on staff.  See FEC v. Mass. Citizens for Life, Inc., 479 U.S. 238, 265 (1986) (stating that the "government must curtail speech only to the degree necessary to meet the particular problem at hand" and "must avoid infringing on speech that does not pose the danger that has prompted regulation").

Second, the first sentence is underinclusive, posing special problems in the First Amendment context because it

35

"raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." Brown v. Entm't Merchants Ass'n, 131 S. Ct. 2729, 2740 (2011); see also City of Ladue v. Gilleo, 512 U.S. 43, 51 (1994) ("[A]n exemption from an otherwise permissible regulation of speech may represent a governmental attempt to give one side of a debatable public question an advantage in expressing its views to the people" (internal quotation marks omitted)). In this case, centers like Centro Tepeyac are singled out for disfavored treatment while many other sources that pregnant women may consult for advice -- internet sites, bookstores, or houses of worship -- are left unregulated, regardless of whether the advice they give comes from a "licensed medical professional." Where, as here, the government seeks to burden speech in the name of some public interest, it must "demonstrate its commitment to advancing this interest by applying its prohibition evenhandedly." Fla. Star v. B.J.F., 491 U.S. 524, 540 (1989).

Third, there are several available alternatives to compelling speech. Both the available alternatives on which the district court relied to find the second sentence unconstitutional, as well as others not considered by the district court, reflect Resolution 16-1252's unconstitutionality. First, Montgomery County could speak with

36

its own voice.  It might, for example, use its own resources to undertake public education campaigns addressing the alleged dangers of pregnancy centers or, more generally, promoting consultations with physicians for pregnant women.  Cf. 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 507 (1996) ("It is perfectly obvious that alternative forms of regulation that would not involve any restriction on speech would be more likely to achieve the State's goal of promotion temperance. . . . [E]ducational campaigns focused on the problems of excessive, or even moderate, drinking might prove to be more effective").

As another alternative, the County could produce a document or website listing local pregnancy centers and noting whether medical professionals are available at each.  See Riley, 487 U.S. at 800 ("[T]he State may itself publish the detailed financial disclosure forms it requires professional fundraisers to file.  This procedure would communicate the desired information to the public without burdening a speaker with unwanted speech").

And as yet another alternative, the County could always pursue the option of prosecuting violations of laws against practicing medicine without a license or laws proscribing false or deceptive advertising.  See Riley, 487 U.S. at 800; see also Nefedro v. Montgomery Cnty., 996 A.2d 850, 863-64 (Md. 2010)

37

(holding that fraud laws were a less restrictive alternative to a law prohibiting remuneration for fortune telling).

Without first trying these or similar options, the County could not have adopted a speech-restrictive strategy. See Thompson, 535 U.S. at 373.

The majority affirms the district court's analysis without recognizing or justifying its erroneous application of First Amendment law. Rather, it abdicates, noting that the court demonstrated "a firm grasp of the legal principles."

Because I conclude that Resolution 16-1252 is unconstitutional on its face, I would affirm the district court's conclusion that the second sentence of the mandated speech was likely unconstitutional and reverse its conclusion that the first sentence could be separated from the second sentence. Additionally, I would reverse the district court's finding that the first sentence was narrowly tailored.

Judges Shedd and Agee have asked me to show them as joining this opinion.